UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CECIL HENRY,<br><br>    Plaintiff,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC,<br>U.S. BANK, N.A.,<br>*As Trustee for Lehman XS Trust, Series 2007-15N*,<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.,<br>NATIONSTAR MORTGAGE, LLC, and<br>AURORA BANK FSB,<br><br>    Defendants. | Civil Action No. TDC-14-1344 |

**MEMORANDUM OPINION**

This case arises out of a dispute over who has rightful title to a house in Laurel, Maryland. Plaintiff Cecil Henry has filed suit against Defendants Aurora Loan Services, LLC ("Aurora Loan"), U.S. Bank, N.A., as trustee for Lehman XS Trust, Series 2007-15N ("U.S. Bank"), Mortgage Electronic Registration Systems ("MERS"), Nationstar Mortgage, LLC ("Nationstar"), and Aurora Bank, FSB ("Aurora Bank") (collectively, "Defendants"), asserting claims under the Uniform Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3-401–15 (West 2012); the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code. Ann., Real Prop. §§ 7-401–09 (West 2012); the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-301–19 (West 2013); and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201–04 (West 2013). Presently pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint

("Motion to Dismiss"). The Motion is now ripe for disposition, and no hearing is necessary. *See* D. Md. Local R. 105.6. For the following reasons, Defendants' Motion is GRANTED.

## BACKGROUND

Unless otherwise noted, the following facts are presented as alleged in the Amended Complaint.

### I. The Mortgage Loan

On May 24, 2007, Henry executed a promissory note for $303,000.00 (the "Note") secured by a Deed of Trust (the "Deed") with American Brokers Conduit on the property located at 13204 Sandston Court in Laurel, Maryland (the "Property"). The Deed of Trust listed MERS as beneficiary of the Deed and nominee for the lender and its successors and assigns. On May 3, 2011, MERS, as the nominee for American Brokers Conduit, assigned the Deed to Aurora Loan, a subsidiary of Aurora Bank, through a document signed by MERS Vice President Nancy L. Walker. Henry alleges that Walker actually worked for Aurora Loan, not MERS, such that the assignment was "self-serving." Am. Compl. ¶ 20, ECF No. 33. On May 15, 2013, Aurora Bank assigned the Deed to Nationstar, which had bought Aurora Bank's mortgage servicing rights. This assignment was signed by Susan Lindhorst, whom Henry alleges is an employee of Nationstar. Then on October 18, 2013, Aurora Loan assigned the Deed to Aurora Bank in an instrument with the notation, "This assignment is being recorded to establish the intended chain of title." Am. Compl. Ex. F, Deed Assignment, ECF No. 33-6.

The loan was securitized as a mortgage-backed security.[1] Henry has attached two versions of the Note to his Amended Complaint. One version, attached to an affidavit filed in

---

[1] A "mortgage-backed security," and likewise "securitization," is established when a financial institution purchases a mortgage from the original lender and pools that mortgage with others in an investment instrument that can be sold. *See Montgomery Cty. v. Fed. Nat'l Mortg. Ass'n*, 740

2

the Circuit Court for Prince George's County, Maryland ("Circuit Court") "certifying ownership of debt instrument and that copy of note is a true and accurate copy," bears an endorsement from the original lender, American Brokers Conduit, to Aurora Loan. Am. Compl. ¶ 27; Am. Compl. Ex. B, Aurora Loan Note, ECF No. 33-2. It does not bear endorsements evidencing any other assignments. The other version of the Note, attached to U.S. Bank's Motion for Order Granting Relief from Automatic Stay filed in the United States Bankruptcy Court for the District of Maryland in *In re Cecil Arend Henry*, No. 13-20662 (Bankr. D. Md.), bears a blank endorsement from American Brokers Conduit.

## II. Procedural History

By September 20, 2010, Henry had defaulted on the loan, and Aurora Loan had notified him of its intent to foreclose on the Property. On October 19, 2011, several individuals identified as substitute trustees, who are not parties to this case, filed a foreclosure action against Henry in the Circuit Court.[2] These individuals filed a June 21, 2011 declaration from the Vice President of Aurora Loan stating that Aurora Loan had appointed them as substitute trustees. On

---

F.3d 914, 918 (4th Cir. 2014); *Deutsche Bank Nat'l Trust Co. v. Brock*, 63 A.3d 40, 42 (Md. 2013). Henry specifically notes that he does not challenge the securitization of the Note. Even if he were challenging the securitization, however, it is well-established that securitization does not render a note unenforceable. *See, e.g., McNeil v. Bank of America*, No. DKC 13-2162, 2014 WL 1831115, at *5 (D. Md. May 7, 2014) ("[E]ven assuming that her loan was securitized, Plaintiff has presented no basis for the Court to declare the deed of trust invalid or unenforceable." (internal quotation marks omitted)); *Lawson v. MERS, Inc.*, No. 8:13-cv-02149-AW, 2013 WL 4482953, at *1 (D. Md. Aug. 20, 2013) ("Judges in this District . . . have repeatedly rejected the notion that, as a general matter, the securitization of notes renders them unenforceable."); *Flores v. Deutsche Bank Nat'l Trust, Co.*, No. DKC 10-0217, 2010 WL 2719849, at *5 (D. Md. July 7, 2010) ("[T]hat Plaintiff's mortgage may have been combined with many others into a securitized pool . . . does not absolve Plaintiff of responsibility for the Note.").

[2] Under Federal Rule of Evidence 201(c)(1), the Court takes judicial notice of the docket in Henry's foreclosure case, which is available through the Maryland Judiciary's website. *Dore v. Henry*, No. CAE11-26816, *available at* http://casesearch.courts.state.md.us/casesearch/inquiryByCaseNum.jis.

December 19, 2014, the Circuit Court stayed the case pending the resolution of this case. *Dore v. Henry*, No. CAE11-26816.

Henry, proceeding *pro se*, filed suit against Defendants on February 24, 2014 in the Circuit Court. He advanced claims (1) to quiet title, (2) for fraud, (3) for violations of the MCPA, and (4) for violations of the MCDCA. On April 21, 2014, Aurora Loan, U.S. Bank, and MERS removed the case to this Court on the basis of diversity jurisdiction because there is complete diversity of citizenship and the Property is valued at $225,600.00. *See Peterson v. Sucro*, 93 F.2d 878, 882 (4th Cir. 1938) ("[I]n suits to quiet title . . . , the amount in controversy is the value of the whole of the real estate to which the claim extends." (internal quotation marks and citation omitted)).

On April 28, 2014, Aurora Loan, U.S. Bank, and MERS filed their first Motion to Dismiss. On October 14, 2014, the Court granted leave for another defendant, Lehman Brothers Holding, Inc. ("Lehman"), to supplement the record with the Motion to Dismiss it filed in state court prior to the case's removal. On November 18, 2014, after a hearing, the Court issued an Order dismissing Lehman, denying the April 28, 2014 Motion to Dismiss as moot, and granting Henry leave to file an Amended Complaint. On November 24, 2014, Henry filed his Amended Complaint seeking a declaratory judgment and alleging violations of the MMFPA, the MCPA, and the MCDCA. On July 27, 2015, Defendants filed the present Motion to Dismiss.

## DISCUSSION

### I. Legal Standards

To defeat a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded "allow[] the Court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). In conducting this analysis, the Court may consider public real estate records where, as here, they are referred to in the complaint and are integral to it. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Because the Court's jurisdiction here is based on diversity, the Court relies on state law, in this case Maryland law, to resolve the pending issues. *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008).

## II. Count I: Declaratory Judgment

In Count I, Henry alleges that U.S. Bank and Aurora have an invalid or defective adverse interest in the Property because (1) there are three conflicting assignments of the Deed of Trust; and (2) there are two versions of the Note. As relief, Henry asks that the Court "declare the rights of the parties, including . . . Defendants' rights, if any, to the first Deed of Trust recorded against the Property, any Defendant's authority to foreclose, whether it is in possession of any original Note, [and] its ownership of the subject Note." Am. Compl. ¶ 42. As discussed below, these arguments fail as a matter of law.

Maryland law providing for the issuance of a declaratory judgment states that:

> Any person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance,

administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

Md. Code Ann., Cts. & Jud. Proc. § 3-406. Under this section, it is within the sound discretion of the court whether a declaratory judgment should be granted. *See Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 849 (Md. 1975). For the following reasons, the Court dismisses the claim for a declaratory judgment.

First, the Court declines to exercise its discretion to consider a declaratory judgment in this case because of the pending foreclosure proceeding. Notably, the Anti-Injunction Act, 28 U.S.C. § 2283 (2012), bars the Court from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* Because none of these "three specifically defined exceptions" applies to this case, *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970), the Court would not be permitted to enjoin the pending state foreclosure proceeding. Courts have held that the limitations of the Anti-Injunction Act also bar a federal court from issuing a declaratory judgment relating to property rights where there is a pending foreclosure proceeding. *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641 (D. Md. 2015) (finding that the Anti-Injunction Act barred the court from issuing a declaratory judgment that the property is not subject to foreclosure sale because it would have had the effect of staying a foreclosure proceeding); *Williams v. JP Morgan Chase Bank, N.A.*, No. RDB-16-0312, 2016 WL 509426, at *2 (D. Md. Feb. 4, 2016) (stating that the Anti-Injunction Act bars declaratory or injunctive relief relating to a pending foreclosure action). In addition, while the foreclosure proceeding is ongoing, the state court maintains exclusive jurisdiction over the Property. *Tucker*, 83 F. Supp. 3d at 641–42; *Williams*, 2016 WL 509426, at

\*2. Consequently, Henry's claim for equitable relief in the form of a declaratory judgment necessarily fails.

Second, Henry's claim for a declaratory judgment that Defendants lack rights to the Deed of Trust and lack authority to foreclose necessarily fails because it is premised on the alleged invalidity of the assignments of the Deed and Note. Henry, however, lacks standing to challenge the validity of such assignments. State contract law governs whether a plaintiff can challenge a mortgage assignment. *See Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (per curiam). In Maryland, only a party or third-party beneficiary to a contract can sue to enforce the terms of that contract. *120 W. Fayette St., LLLP v. Mayor & City Council of Balt.*, 43 A.3d 355, 368 (Md. 2012). The intervening assignments do not affect Henry's rights in that, regardless of their validity, he "still has an obligation under the note to make payments." *Wolf*, 512 F. App'x at 342. The assignments only affect to whom he must make those payments. Because Henry does not and cannot allege that he is a party to, or an intended third party beneficiary of, any of the allegedly improper assignments, he has no standing to challenge them. *See Wolf*, 512 F. App'x at 342 (finding that the plaintiff did not have standing to challenge the validity of an assignment by MERS).

Third, Henry has also failed to identify any plausible basis for the conclusion that the assignments were contradictory or invalid. To the contrary, Henry's allegations do not consider that the Deed of Trust explicitly listed MERS as a beneficiary, that MERS generally "tracks ownership interests in residential mortgages in an electronic database," and that "[m]ortgages on which MERS is named as a beneficiary may be freely transferred among MERS members and the transfers are recorded in MERS electronic database but are not public[ly] recorded," *Suss v.*

*JP Morgan Chase Bank, N.A.*, No. WMN-09-1627, 2010 WL 2733097, at *1 (D. Md. July 9, 2010). The Court of Appeals of Maryland has described this process in more detail:

> MERS . . . skirt[s] the traditional land-title recording process in localities . . . and replac[es] it with the industry's own tracking system. To do so, the mortgage broker names MERS as a nominal mortgagee in the mortgage. Then, subsequent transfers of the mortgage are recorded electronically and entirely on MERS while the original mortgage, recorded in the public land records, remains unchanged.

*Anderson v. Burson*, 35 A.3d 452, 455–56 (Md. 2011) (internal citations omitted).

Courts have regularly held that the MERS system of recordation "is proper and assignments through that system are valid." *Suss*, 2010 WL 2733097, at *5; *see also McNeil v. Bank of America*, No. DKC 13-2162, 2014 WL 1831115, at *5 (D. Md. May 7, 2014); *Parker v. Deutsche Bank Nat'l Trust Co.*, No. WMN-12-3358, 2013 WL 1390004, at *3 (D. Md. Apr. 3, 2013). Moreover, courts in this district have dismissed similar claims where assignments of both instruments were conducted in the same manner as here. *See, e.g., Somarriba v. Greenpoint Mortg. Funding, Inc.*, No. 13-CV-072-RWT, 2013 WL 5308286, at *1, *3 (D. Md. Sept. 19, 2013).

Contrary to Henry's claim, the three assignments made through this system that were attached to his Amended Complaint are not inconsistent with each other. Read together, these three assignments clearly show that: (1) there was an initial assignment of the Deed of Trust from MERS on behalf of American Brokers Conduit to Aurora Loan; (2) there was a later assignment from Aurora Bank to Nationstar; and (3) there was a correcting assignment to "establish the chain of title" from Aurora Loan to Aurora Bank, to show how Aurora Bank received authority to make the second assignment. Am. Comp. Ex. F. These documents do not demonstrate conflicting claims that must be addressed through a declaratory judgment.

For all of these reasons, Count I is dismissed.

## III. Count II: Maryland Mortgage Fraud Protection Act

Count II must be dismissed because Henry fails to state a claim for mortgage fraud and does not meet the heightened standard for pleading fraud in federal court. To allege mortgage fraud in Maryland, a plaintiff must assert facts sufficient to establish that the defendant, with intent to defraud, (1) knowingly made "any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process"; (2) knowingly used or facilitated the use of "any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process"; or (3) filed or caused to be filed "in the land records in the county where a residential real property is located, any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission." Md. Code Ann., Real Prop. § 7-401(d). In addition, Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead fraud claims in federal court with particularity. A plaintiff must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River, Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation and internal quotation marks omitted).

Henry fails to state a plausible fraud claim because he has not identified any deliberate misrepresentation. He alleges that Defendants engaged in fraud by (1) representing that they were authorized to foreclose knowing that they were not the secured party or the holder of the

Note; (2) initiating the foreclosure action in the Circuit Court; and (3) filing land records that they knew to contain a deliberate misstatement, misrepresentation, or omission. All three allegations turn on Henry's claim that (1) the assignments of the Deed of Trust were invalid because MERS lacked authority to assign the Deed and the signatories lacked authority to execute them; and (2) the existence of two versions of the Note rendered the endorsement to Aurora Loan invalid.

These claims, however, fail as a matter of law. The Deed of Trust specifically identifies MERS as a beneficiary, and the authority of MERS to then assign the Deed of Trust to others has been regularly upheld by courts, including in this district. *See McNeil*, 2014 WL 1831115, at *4–5 (noting that the "plaintiffs' claim, that MERS did not have the authority to assign the mortgage, flatly contradicts the language in the Deed of Trust" that MERS is a beneficiary and nominee for the Lender); *Suss*, 2010 WL 2733097, at *5; *see also Sanchez v. U.S. Bank, N.A.*, No. C 09-04506 SI, 2010 WL 670632, at *5 (N.D. Cal. Feb. 22, 2010).

Henry's claim that assignments were invalid because the signatories lacked authority also fails. Henry claims that Nancy Walker, the MERS Vice President who executed the assignment of the Deed of Trust to Aurora Loan, was actually an employee of Aurora Loan, and therefore executed a self-serving assignment. Similarly, he alleges that Susan Lindhorst, the Aurora Bank FSB Assistant Secretary who signed the May 15, 2013 assignment, was actually an employee of Nationstar, the assignee. Henry's claim regarding these allegedly unauthorized assignments fails for two reasons. First, as with the other claims alleging improprieties with the assignments, Henry lacks standing to challenge the circumstances of these assignments. *See Wolf*, 512 F. App'x, at 342. Although Maryland courts have not specifically addressed whether a borrower has standing to challenge an unauthorized assignment, several courts have found that a plaintiff

lacks such standing because an unauthorized assignment document would only render the assignment voidable by the assigning party, not void as a matter of law. In a similar case in which borrowers challenged an assignment signed as "Vice President of Citi" when the signor was actually an employee of a third-party contractor, the United States Court of Appeals for the Fifth Circuit held that, while a plaintiff could challenge the validity of an assignment if it could plausibly allege that the assignment was void, the assignment in question was not void *ab initio* but rather voidable at the option of the assignor. *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 225–28 (5th Cir. 2013) (holding that "facially valid assignments cannot be challenged for want of authority except by the defrauded assignor").

Various district courts addressing the same issue in different jurisdictions have reached the same conclusion.[3] *See, e.g., Brodie v. Nw. Tr. Servs., Inc.*, No. 12-CV-0469-TOR, 2012 WL 6192723, at *2–3 (E.D. Wash. 2012) (finding that an assignment document signed by someone without authorization did not discharge the obligation to pay the debt but would allow the defrauded party, not the debtor, to void the assignment at its option); *Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10-cv-08185-ODW (FFMx), 2012 WL 3426278, at *6 (C.D. Cal. Aug. 13, 2012) (finding that the plaintiff "suffered no injury" arising from robo-signing because "[t]he foreclosure would occur regardless of what entity was named as trustee"); *Bateman v. Countrywide Home Loans*, No. 12-00033 SOM/BMK, 2012 WL 5593228, at *4 (D. Haw. Nov. 14, 2012) (citing 29 *Williston on Contracts* § 74:50 (4th ed. 2014)) ("The reason debtors generally lack standing to challenge assignments of their loan documents is that they have no

---

[3] Cases addressing allegations that the signatories lacked authority to sign an assignment or other instrument relevant to a foreclosure proceeding, whether because of their lack of corporate authority or their lack of personal knowledge of the contents of the instrument, often refer to the practice as "robo-signing." *Att'y Grievance Comm'n of Md. v. Doe*, 73 A.3d 151, 176 (Md. 2013) (citation omitted).

interest in those assignments, and the arguments they usually make do not go to whether the assignments are void *ab initio,* but instead to whether the various assignments are voidable. Debtors lack standing to challenge voidable assignments; only the parties to the assignments may seek to avoid such assignments."); *In re Mortg. Elec. Registration Sys. (MERS) Litig.*, No. CV 10-1547-PHX-JAT, 2012 WL 932625, at *3 (D. Ariz. Mar. 20, 2012). These holdings are consistent with the principle of Maryland law that "contracts obtained by fraud are not absolutely void, but are 'voidable at the election of the parties affected by the fraud' and 'binding until properly avoided.'" *Julian v. Buonassissi*, 997 A.2d 104, 119–20 (Md. 2010) (quoting *Urner v. Sollenberger*, 43 A. 810, 811–12 (Md. 1899)) (holding that a conveyance of deed of trust allegedly without providing legally required disclosures is voidable at the election of the parties, not void *ab initio*). Under this reasoning, regardless of who employed Walker and Lindhorst or who authorized them to sign the assignments to Aurora Loan and Nationstar, the assignments would be valid unless MERS, Aurora Bank, or American Brokers Conduit sought to void them, which has not occurred.

Second, even if an assignment of the Deed of Trust were signed by an unauthorized official and that signature were deemed to be a misrepresentation, Henry cannot plausibly allege that he relied on that misrepresentation to his detriment. *See Nails v. S & R, Inc. t/a VOB Auto Sales*, 639 A.2d 660, 669 (Md. 1994) (holding that to establish the reliance element of a fraud claim, the plaintiff must show at a minimum that "the misrepresentation substantially induced the plaintiff to act"). In *Willis v. Bank of America Corporation*, No. ELH-13-02615, 2014 WL 3829520 (D. Md. Aug. 1, 2014), for example, the court dismissed with prejudice a fraud claim arising from the use of robo-signed documents relating to a foreclosure action in part because of the lack of allegations that the plaintiff "justifiably relied" on the signatures. *Id.* at *20–21. The

court noted that there was no allegation that the documents contained any false information on the amount due on the loan or that the contents were inaccurate in a way that caused harm to the plaintiff. *Id.* Notably, the United States Court of Appeals for the Fourth Circuit has found, in the context of a claim that the lack of authorized signatures on documents in a foreclosure proceeding violated the Fair Debt Collection Practices Act, that such signatures do not constitute "material" misrepresentations because the identity and knowledge of the signatories had "no connection to the debt at issue" where "the documents correctly stated the debt" and because there was no allegation how "any consumer would be misled by a signature that is affixed to a document that was substantively correct." *Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013); *see also Repokis v. Deutsche Bank Nat'l Trust Co.*, No. 11-15145, 2012 WL 2373350 at *2 (E.D. Mich. June 25, 2012) (dismissing fraud claim based on unauthorized signature because, "as a nonparty to the assignment," the plaintiff could not "claim that he relied on the misrepresentation" or that he was "damaged due to fraud or misrepresentation because he alone is responsible for his default on the loan"). Under this reasoning, even if the signatory of the Deed of Trust assignment was unauthorized, Henry continued to owe the same amount and was required to repay the loan. Because the nature of the signature on the assignment would not have caused the borrower to act any differently, Henry cannot fairly allege that he relied on any misrepresentation arising from the allegedly unauthorized signatures.

As for Henry's allegation of fraud relating to the alleged existence of two different Notes, an examination of these documents indicates that the two versions are actually copies of the same document, except that one has an endorsement in blank by American Brokers Conduit, and the other has "Aurora Loan Services, LLC" written into that same endorsement stamp as the payee. Am. Compl. ¶¶ 27 & 30; Am. Compl. Ex. B, Aurora Loan Note; Am. Compl. Ex. G,

13

Blank Note, ECF No. 33-7. The only plausible conclusion to be drawn is that the copy of the Note endorsed in blank was made first, and the second copy was made after the Note was specifically endorsed to Aurora Loan. Thus, there is nothing facially invalid about the Note. More importantly, because the later endorsement is from the original lender, American Brokers Conduit, to the entity that is seeking to foreclose, Aurora Loan, the Note, on its face, identifies Aurora Loan as the valid holder of the Note. *See Anderson v. Burson*, 35 A.3d 452, 460–61 (Md. 2011) (finding that when a note holder endorses the note to another, and gives possession of the note to that person or entity, the recipient is the new holder of note). Thus, Henry has not alleged facts to support a plausible claim of fraud.[4]

## IV.     Count III: The Maryland Consumer Protection Act

In Count III, Henry alleges that, in asserting that they had the right to enforce the Deed of Trust, Defendants violated the MCPA by employing unfair and deceptive trade practices, specifically, making false or misleading statements or material omissions. Under the MCPA, a person is prohibited from engaging in any "unfair or deceptive trade practice" in a variety of consumer transactions and activities, including the collection of consumer debts and the sale, lease, rental, or loan of consumer goods, realty, or services. Md. Code Ann., Com. Law § 13-303(5). The term "unfair or deceptive trade practices" includes any:

> Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods, consumer realty, or consumer service.

Md. Code Ann., Com. Law § 13-301(9).

---

[4] Because Henry has not alleged facts showing that Defendants were not entitled to enforce the Note and Deed of Trust, he has also failed to demonstrate that Aurora Loan lacked authority to appoint substitute trustees.

To state a claim under the MCPA, plaintiffs must prove that they relied on the material misrepresentation or material omission and sustained an actual injury or loss as a result. *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 533–34 (D. Md. 2011). Reliance requires a showing that the misrepresentation substantially induced the consumer's choice. *Id.* at 532. A consumer relies on a material omission where it is "substantially likely that the consumer would not have made the same choice in question had the commercial entity disclosed the omitted information." *Id.* at 535. Moreover, MCPA claims involve fraud and thus are also subject to the heightened pleading standards under Rule 9(b). *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013).

Henry fails to state a claim under the MCPA because, as discussed above, he has not alleged sufficient facts to show that Defendants made any false or misleading representations. The allegations that the assignments of the Deed were signed by unauthorized individuals, and that there was more than one Note, do not establish that Defendants falsely claimed that they had the right to foreclose or otherwise establish any misrepresentation upon which Henry relied. *See supra* Part III. In *Willis*, the court dismissed an MCPA claim alleging irregularities in foreclosure filings, including signing of documents by unauthorized individuals, because of the lack of facts "to show that [the plaintiff] relied on [the] defendants' misrepresentations or omissions" or "how the alleged errors in the foreclosure materially impacted [the] plaintiff's circumstances or conduct." *Willis*, 2014 WL 3829520 at *23. Likewise, Henry's assertion of the same or similar claims cannot establish a cause of action under the MCPA. Accordingly, Count III is dismissed with prejudice.

## V. Count IV: The Maryland Consumer Debt Collection Act

In Count IV, Henry alleges that Defendants violated the MCDCA by claiming, attempting, and threatening "to enforce a right with knowledge that they were using false documents to support their actions, and without any authority to do so." Am. Compl. ¶ 65. The MCDCA prohibits debt collectors from using threatening or fraudulent methods while attempting to collect a delinquent debt. Md. Code Ann., Com. Law § 14-202. Under the MCDCA, a debt collector cannot "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." § 14-202(8). "Maryland courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the debt was invalid, or acted with reckless disregard as to its validity." *Lembach*, 528 F. App'x at 304 (internal quotation marks omitted); *see also Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004) ("This has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right.").

Viewing the Amended Complaint as a whole, Henry's claim appears to rely entirely on the premise that Defendants had no right, and knew they had no right, to collect the mortgage debt because the debt is completely invalid under the same theories he offers for his other claims—that unauthorized signers executed assignments of the Deed of Trust and that there were two different Notes. As discussed above, however, these theories do not support a conclusion that the debt is invalid, so Henry cannot show that the efforts to collect his debt were conducted with knowledge or disregard of the falsity of the right to collect. *See Lembach*, 528 F. App'x at 304–05 (dismissing MCDCA claim arising from unauthorized signatories because "the MCDCA does not allow for recovery for an error in the process of collecting this legitimate and


undisputed debt"). Accordingly, Henry's MCDCA claim fails, and Count IV is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. A separate Order shall issue.

Date: March 25, 2016

THEODORE D. CHUANG
United States District Judge